AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California


FILED
Sep 27 2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ carolinalopez   DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
) Case No.   23-mj-08743-LR
Black Apple iPhone )
Model: 11 )
With no identifying numbers or features )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Robert Perez incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Border Patrol Agent Robert Perez
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

Date: __09/27/2023__

_____
Judge's signature

City and state: __El Centro, California__   HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A
PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black Apple iPhone
> Model: 11
> With no identifying numbers or features
> Seized from Antonio Todd PAGE
> **(Target Device)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 25, 2023, up to and including September 25, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Robert Perez, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

> Black Apple iPhone
> Model: 11
> With no identifying numbers or features
> Seized from Antonio Todd PAGE
> **(Target Device)**

as further described in Attachment A, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Antonio Todd PAGE for transportation of Jorge VALENCIA-Toledo (VALENCIA) (the "Material Witness") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Device was seized from PAGE on or about September 24, 2023, incident to the arrest of PAGE and the Material Witness. The Target Device is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

1

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent and have been so employed since 2000. I am currently assigned to the El Centro Station, and I am currently a member of the El Centro Sector Prosecutions Unit. I am a graduate of the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia and a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized by Rule 41(a) of the Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience in and have received training with respect to conducting investigations of violations of Titles 8, 18, 19, and 21 of the United States Code.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit,

providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as

3

images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

10. On September 24, 2023, Border Patrol Agents - Intelligence assigned to the El Centro Sector Intelligence Anti-Smuggling Unit Group #2 (ASU) were conducting surveillance in Calexico, California. The ASU wears plain clothes and drives unmarked Service vehicles to blend in with the public. ASU conducts surveillance and investigations on known smugglers and smuggling transportation cells operating in the Imperial Valley.

11. On this date, at approximately 7:48 p.m., Supervisory Border Patrol Agent-Intelligence (SBPA-I) M. Clinton received a notification regarding a black Ford Explorer

4

(Ford) bearing Arizona license plates. The notification informed SBPA-I M. Clinton that the Ford was travelling westbound on Interstate 8 into the El Centro Border Patrol Station Area of Responsibility (AOR). This Ford was previously identified by multiple Border Patrol Agents from the Tucson, Yuma, and El Centro Border Patrol Sectors after the Ford was observed making quick trips to areas where illegal aliens were being apprehended or tracked. These quick trips east to west or west to east turn arounds are very common tactics used by alien smugglers who travel to the area to avoid detection by Border Patrol Agents. The vehicle also has three prior Agency alerts for alien smuggling. Upon receiving this notification of the Ford travelling westbound, SBPA-I M. Clinton notified additional ASU Agents that the Ford was travelling towards them and began observing the westbound traffic on Interstate 8.

12.  At approximately 7:55 p.m., SBPA-I M. Clinton observed the Ford pass his location at Ogilby Road and Interstate 8 and continue travelling westbound towards Calexico, California. SBPA-I M. Clinton notified additional ASU Agents of his observation and initiated mobile surveillance on the Ford. SBPA-I M. Clinton kept constant visual on the Ford as it travelled westbound on Interstate 8, then exited Interstate 8 at the Highway 98 Exit and briefly stopped on top of the overpass. SBPA-I M. Clinton informed Agents over the Calexico East radio frequency that he was currently observing a vehicle that he suspected was in the area to pick up illegal aliens.

13.  SBPA-I Clinton observed that the vehicle had a faded paint job, several scratches, and dings, and appeared to be in overall poor condition. SBPA-I Clinton knows from experience that alien smugglers often use vehicles with a low monetary value to minimize financial loss to the Transnational Criminal Organization should the vehicle be seized by law enforcement. It should also be noted that the paint job appeared to be of poor quality and was possibly painted black with spray paint. Record checks on the vehicle stated that the vehicle was tan. SPBA-I Clinton suspected that the owner of the vehicle may have painted the vehicle himself after being stopped by Border Patrol on previous occasions as a tactic to deceive Agents.

5

14. After briefly stopping on top of the overpass, SBPA-I M. Clinton watched as the Ford continued travelling and then merged back onto the eastbound lanes of Interstate 8 and began travelling back towards Yuma, Arizona. As the Ford continued travelling eastbound, the MSC (Mobile Surveillance Capabilities) operator informed Agents that one individual had walked up to the IBF (International Boundary Fence) from the Mexico side, climbed to the top and made an illegal entry into the United States. The MSC operator as well as the Calexico Border Patrol Station Remote Video Surveillance System operator (841) watched as the individual ran towards Interstate 8.

15. SBPA-I M. Clinton kept constant visual on the Ford while the MSC operator and 841 kept constant visual on the individual. The MSC operator and 841 watched as the individual ran to the side of Interstate 8, east of the Gordons Well Exit, and attempted to conceal himself in a bush. As the Ford continued travelling towards the area that the individual was hiding in, Border Patrol Agent (BPA) A. Torabpour informed ASU Agents that he would position himself in the area and conduct a vehicle stop on the Ford to perform an immigration inspection on all occupants within the vehicle. BPA Torabpour was dressed in full rough duty uniform and was operating a fully marked Border Patrol Tahoe.

16. SBPA-I M. Clinton watched as the Ford approached the area that the individual was hiding in, slowed down, turned the hazard lights on, pulled over, and came to a complete stop. After the Ford came to a complete stop, the MSC operator, 841 and BPA A. Torabpour watched as the individual emerged from the bush, ran to Ford, and entered the front passenger seat of the Ford. As the individual, later identified as Jorge VALENCIA-Toledo (VALENCIA) entered the Ford and shut the door, BPA A. Torabpour activated the emergency lights and sirens of his service vehicle to conduct a vehicle stop and perform an immigration inspection on all occupants within the Ford. After BPA A. Torabpour activated the emergency lights and sirens, but prior to the vehicle stop, the driver, later identified as Antonio Todd PAGE (PAGE), drove forward in the vehicle with VALENCIA for approximately 20 seconds at a slow rate of speed.

6

17. BPA A. Torabpour, SBPA-I M. Clinton, and BPA-I S. Ley approached the Ford with Border Patrol markings and insignia fully visible. BPA A. Torabpour identified himself as a Border Patrol Agent to the driver, PAGE, and questioned him as to his citizenship. PAGE stated that he was a United States citizen. BPA-I S. Ley identified himself as a Border Patrol Agent to VALENCIA and questioned him as to his citizenship. VALENCIA admitted to being a citizen of Mexico in the United States illegally. VALENCIA admitted that he made the illegal entry by climbing the border fence in an area other than through a designated Port of Entry. PAGE and VALENCIA were subsequently placed under arrest and transported to the Calexico Border Patrol Station for further processing.

18. The Ford was seized as per El Centro Sector guidelines. During an inventory search of the Ford, SBPA-I M. Clinton discovered a Glock 19X Pellet gun tucked near the seat belt between the driver's seat and the center console. SBPA-I M. Clinton also discovered a pair of brass knuckles inside of the center console. Both weapons were seized. A firearms check of the pellet gun revealed that this weapon was previously recovered by the Memphis, Tennessee Police Department.

19. On September 24, 2023, at approximately 9:30 p.m., PAGE, provided Border Patrol Agent-Intelligence (BPA-I) A. Garcia with a statement in the English language. PAGE stated he understood his rights and was willing to provide a statement without the presence of an attorney. PAGE stated he was born in Virginia and is a United States citizen. PAGE also stated that he is homeless. PAGE stated that on today's date he was headed to El Centro and decided to turn back to Yuma, Arizona because he was having car trouble. PAGE stated that he pulled over to check on his vehicle and someone got in his car. PAGE stated he does not know Spanish and could not communicate with the person. PAGE stated he was not being paid and denied attempting to smuggle illegal aliens. PAGE stated that he knows that smuggling is illegal, and he has been pulled over by Border Patrol before. PAGE stated he has never been arrested for smuggling aliens in the past.

20. Material witness Jorge VALENCIA-Toledo stated he is a citizen of Mexico. VALENCIA stated that he does not have any legal documents allowing him to live, work, or remain in the United States legally. VALENCIA stated that he traveled to Mexicali, Baja California, three days ago by car. VALENCIA stated the made arrangements with an unknown smuggler. VALENICA stated that he was going to pay $10,000 dollars to be smuggled illegally into the United States. VALENCIA stated that he illegally entered the United States today by climbing the wall near Mexicali.

21. VALENCIA further stated that after crossing into the United States he was picked up by a car that stopped on the side of the road with hazard lights. VALENCIA stated that he was informed that the vehicle that would pick him up would have hazard lights on. VALENCIA stated that the vehicle was driven by a person that simply said "what's up" in the English language. VALENCIA stated that the person did not ask him anything as he boarded. VALENCIA stated that he was arrested by the Border Patrol shortly after. VALENCIA stated that he was going to Fontana, California. VALENCIA was presented with six pack photo line-up labeled A and identified picture #1 as the person that was driving the car he boarded. Picture #1 depicts PAGE.

22. During a search incident to arrest of PAGE, one Black iPhone (Target Device) 11 was found by BPA Torabpour on PAGE's person. PAGE claimed ownership of the Target Device and it was seized as evidence.

23. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Device for data beginning on August 25, 2023, up to and including September 25, 2023, the day after the arrest of PAGE and the Material Witness.

## METHODOLOGY

24. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

27. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that PAGE and the Material Witnesses used the Target Device to facilitate the offense of alien smuggling. The Target Device was likely used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by PAGE, the Material Witness, and others continues to exist on the Target Device. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Robert Perez Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 27th day of September, 2023.

_____ 11:26 a.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

# ATTACHMENT A
PROPERTY TO BE SEARCHED

The following property is to be searched:

>Black Apple iPhone
>Model: 11
>With no identifying numbers or features
>Seized from Antonio Todd PAGE
>**(Target Device)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 25, 2023, up to and including September 25, 2023, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.